IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 23-1100

| | | |
|---|---|---|
| Incubate Products, LLC, Robert Hefter, | ) | |
| Salvadore Castro, and Kevin Johnson, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| Andrew M. Shirlen, | ) | |
| | ) | |
| Defendant. | ) | |

Incubate Products LLC (Incubate Products), Robert Hefter, Salvadore Castro, and Kevin Johnson file their Complaint against Andrew M. Shirlen ("Shirlen") and allege as follows:

I.    INTRODUCTION

U.S. Patent 11,614,304 (the '304 patent) (Exhibit 1) entitled "Hands-Free Long-Gun Carrier" lists Andrew M. Shirlen as the sole inventor.  Shirlen is not the sole inventor of the '304 patent.  Rather, Robert Hefter, Salvadore Castro, and Kevin Johnson are co-inventors of the gun carrier described and claimed in the '304 patent. Indeed, Hefter, Castro, and Johnson, working and collaborating together, conceived, designed and prototyped all six embodiments or designs of the gun carrier shown, described and claimed in the '304 patent.

This is no ordinary inventorship dispute.  Sherlin's failure to appraise the United States Patent and Trademark Office that Hefter, Castro, and Johnson are co-inventors

1

of the '304 patent is indefensible.  23 drawings are contained in the '304 patent.  All of these drawings were prepared by Castro and Johnson.  Each drawing shows designs conceived and designed jointly or individually by Hefter, Castro, and Johnson.  None of the designs depicted in the 23 drawings were conceived or designed by Shirlen.  Despite this, Shirlen refuses to consent to correcting inventorship, thus necessitating this action.

## II.    THE ACTION

1.    Incubate Products, Hefter, Castro, and Johnson, pursuant to 35 U.S.C. § 256, seek to correct the inventorship of the '304 patent by adding Hefter, Castro, and Johnson as co-inventors.  Further, this is an unjust enrichment action as Sherlin has benefited and been unjustly enriched as a result of the product design services rendered by Incubate Products.

## III.    THE PARTIES

2.    Incubate Products, LLC is a limited liability company organized and existing under the laws of the State of North Carolina and is located in Cary, North Carolina.

3.    Robert Hefter is an individual residing at 202 Serence Court, Cary, North Carolina 27518.

4.    Salvadore Castro is an individual residing at 107 Zaharis Cove, Raleigh, North Carolina  27603.

5. Kevin Johnson is an individual residing at 4025 Woodland Park Drive, Hillsborough, North Carolina 27278.

6. Upon information and belief, Andrew M. Shirlen is an individual residing at 281 N. Serenity Hill Cir., Chapel Hill, North Carolina 27516.


IV. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 1367 and 35 U.S.C. § 256.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).


V. BACKGROUND

A. Hefter, Castro, and Johnson's conception and design of the gun carrier shown and claimed in the '304 patent

9. Incubate Products is a product incubating company specializing in product design, prototyping, and manufacturing sourcing.

10. Hefter is managing member and Chief Executive Officer of Incubate Products. Castro is a mechanical engineer and during 2020 was Chief Operations Officer at Incubate Products. He has more than 35 years of experience designing and developing products and holds over 90 patents. Johnson is also a mechanical engineer and a graduate of Virginia Polytechnic Institute and State University (Virginia Tech). He too has extensive experience in designing and developing a wide range of products.

11. Upon information and belief, Shirlen is a physician's assistant and associated with UNC Health.

12. In March of 2020, Shirlen approached Incubate Products about the prospects of Incubate Products designing, developing, and prototyping a shotgun holster. On March 13, 2020, Shirlen met with Hefter, Castro, and Johnson at Incubate Products' office. Shirlen brought to the meeting a modified plaster arm cast. An elongated slot was cut along the side of the arm cast. The elongated slot formed an opening in the arm cast that supposedly enabled the receiver of a shotgun to be inserted through the opening into the arm cast and held therein.

13. That was the extent of Shirlen's concept for a shotgun holster. He presented no drawings or specifications, nor any other material relating to a shotgun holster design.

14. On April 1, 2020, in a follow-up telephone conversation, Hefter and Shirlen continued to discuss the possibility of Incubate Products designing and developing a shotgun holster. Further there was some discussion as to possible ways Incubate Products and Shirlen could commercialize or exploit a shotgun holster.

15. By April 1, 2020, Incubate Products had independently completed some initial market research into shotgun holsters and carriers. Based on this initial research, Incubate Products believed there was a market for a reliable, easy-to-use, hands-free shotgun carrier. By early April 2020, Incubate Products decided to undertake the design, development, and prototyping of a hands-free shotgun carrier. While there were general discussions with Shirlen concerning the monetization and marketing of a

4

shotgun holster or carrier, no formal or informal agreement was reached concerning ownership of any resulting patents or other intellectual property.

16.    Starting in early April 2020, Hefter, Castro, and Johnson began designing the gun carrier shown and described in the '304 patent.  In Incubate Products' office, surrounded by multiple white boards and computers, Hefter, Castro, and Johnson began brainstorming, first discussing and considering desirable features for the gun carrier and thereafter sketching and designing, element-by-element, components of the gun carrier shown in the '304 patent.  Over a period of approximately one month, Hefter, Castro, and Johnson worked together and collaborated to conceive the gun carrier designs shown, described and claimed in the '304 patent.  Hefter, Castro, and Johnson have assigned their rights in the inventions disclosed and claimed in the '304 patent to Incubate Products.

17.    Common to all of the conceived designs are:

(a)    a body harness;

(b)    a gun gripping structure for receiving and holding a gun; and

(c)    a support plate for supporting the gripping structure on the body harness.

18.    In the beginning, Hefter, Castro, and Johnson focused on designing a gripping structure for receiving and holding a shotgun.  While working together, they conceived and designed multiple gripping structures.  Seven of the designs are referred to by Incubate Products as follows:

-    Generation 1 design is shown in Figure 17 of the '304 patent.

-    Generation 2 design is shown in Figure 18 of the '304 patent.

5

- Generation 3 design is shown in Figure 19 of the '304 patent.

- Generation 4 design is shown in Figures 14-16 of the '304 patent.

- Generation Clam Shell is shown in Figures 20-22 of the '304 patent.

- Generation 5 design is similar in many respects to the designs found in Generations 1-4, but not particularly illustrated in the '304 patent.

- Generation 6 design is shown in Figures 1-13 of the '304 patent.

19.     Structurally, each of the gripping structures include upper and lower jaws that form an opening in the front of the gripping structure.  The jaws were designed to be deflectable and resilient.  When a gun is inserted into the opening between the jaws, the jaws deflect, allowing the gun to be inserted into the gripping structure.  Because of the resilient nature of the jaws, once the gun is inserted, the jaws tend to close around portions of the gun and secure the gun in the gripping structure.

20.     All of the gripping structures conceived by Hefter, Castro, and Johnson and shown in the '304 patent include the basic jaw structure and function described in the preceding paragraph.  There were, however, variations in the gripping structure designs.  Generation 1-4 designs (shown in Figures 14-19 of the '304 patent) employ screws extending through elastomer washers to attach the upper jaw to the back of the gripping structure.  This is illustrated in the Generation 4 design shown in Figures 14-16 of the '304 patent.  Figure 14 of the '304 patent is depicted below.  Adjacent to Figure 4 of the '304 patent is a SolidWorks drawing of the Generation 4 gripping structure and support plate created by Castro.



| Fig. 14 of '304 patent | SolidWorks drawing by Castro (Gen 4) |

Upper jaw 46 is secured to the back 48 of the gripping structure by screws 50 that extend through elastomer washers 52. This forms an adjustable height connection similar to a hinge inasmuch as the upper jaw is permitted to flex up and down relative to the back 48 of the gripping structure. The upper and lower jaws are constructed of a deflectable material that allows the long gun to be inserted and removed.

21.    Figure 14 of the '304 patent is a copy of Castro's SolidWorks drawing depicted above in Paragraph 20.

22.    In April of 2020, Hefter, Castro, and Johnson conceived and designed another gripping structure. They referred to this as a clam shell gripping structure. This is the clam shell gripping structure shown in Figures 20-22 of the '304 patent. Hefter,

7

Castro, and Johnson concluded that the clam shell gripping structure was not an optimum design.

23.    After conceiving and designing the Generation 4 and clam shell gripping structures, Hefter, with the help of Castro and Johnson, in mid-May 2020, conceived another design for the gripping structure.  This is referred to as the Generation 6 gripping structure.  This design was considered superior to earlier designs as it incorporated an overlapping back portion that allows the height of the gripping structure to be adjusted.  Depicted below is a drawing (annotated with reference numbers matching those in the drawings of the '304 patent) prepared by Johnson of the Generation 6 gripping structure.  Shown next to Johnson's drawing is Figure 4A of the '304 patent.



| Fig. 4A of '304 patent | SolidWorks drawing by Johnson (Gen 6) |
|---|---|

As referenced in the '304 patent, the gripping structure comprises upper and lower jaws (26, 28), each jaw being generally L-shaped and including a leg portion (34, 36) and a foot portion (30, 32). When assembled, the leg portions (34, 36) form the upper and lower jaws while the foot portions (30, 32) overlap and form the back of the gripping structure.

24.     Johnson prepared a series of Solidworks drawings showing the details of the Generation 6 gripping structure. A true and correct copy of those drawings are attached hereto as Exhibit 2. The drawings include sectional and exploded views of the

9

Generation 6 gripping structure, as well as full assembly drawings showing the Generation 6 gripping structure integrated with the support plate and body harness. Figures 1-13 of the '304 patent are copies of the drawings prepared by Johnson.

25.    Besides the gripping structure, claim 1 of '304 patent describes the gun carrier as including a support plate supported at the user's chest.  The support plate supports the gripping structure.  Hefter, Castro and Johnson conceived and designed the claimed support plate.  Further, they conceived the concept of employing the support plate between the gripping structure and the body harness as a means of supporting and positioning the gripping structure in the port arms position on the body of the user.  The support plate is indicated generally by the number 14 in the drawings of the '304 patent.  It is particularly shown in Figure 3 and throughout the drawings of the '304 patent.

26.    Depicted below is a drawing of the support plate prepared by Johnson in mid-April of 2020 at the direction of Hefter.  Adjacent to Johnson's SolidWorks drawing is Figure 3 of the '304 patent.



| Fig. 3 of '304 patent | SolidWorks drawing by Johnson (Gen 6) |

10

Johnson's drawings of the support plate are found throughout the '304 patent.

27.    Claim 10 of the '304 patent calls for the gun carrier to include a harness that supports the support plate. Hefter conceived and designed the harness shown in Figures 1-16 and 20-22 of the '304 patent. Depicted below on the right is a drawing of the harness prepared by Johnson at the direction of Hefter in mid-April 2020. Figure 1 of the '304 patent, depicted below on the left, is a copy of the SolidWorks drawing by Johnson.

| Fig. 1 of '304 patent | SolidWorks drawing by Johnson (Gen 6) |
|---|---|
|  | |

Drawings of the harness appearing throughout the '304 patent are copies of the drawings prepared by Johnson.

28.     Hefter, Castro, and Johnson built multiple prototypes of the gun carrier shown and described in the '304 patent.  These prototypes included Generations 1-6 and clam shell gripping structures, the support plate and body harness.  These prototypes were disclosed to Sherlin and multiple prototypes were delivered to Sherlin.  True and correct copies of photographs of prototypes built by Hefter, Castro, and Johnson are attached hereto as Exhibit 3.

29.     Besides the meeting of March 13, 2020 and telephone conversation of April 1, 2020, Hefter, on a number of occasions, updated Shirlen on the progress that he, Castro, and Johnson were making in designing the gun carrier.  On April 24, 2020, Hefter met with Shirlen and disclosed to him details of the Generation 1 gripping structure and how he perceived the gripping structure being supported on a body harness.  During the meeting, Hefter presented Shirlen with a "concept update" report. A true and correct copy of the report is attached hereto as Exhibit 4.  This report disclosed design criteria and concepts of the gun carrier, prior art gun carrier designs, harness configurations, and details of the Generation 1 gripping structure.

30.     On May 15, 2020, Hefter, Castro, and Johnson held another update meeting with Shirlen.  By this time, Hefter, Castro, and Johnson had completed the design for the Generation 6 gripping structure.  An update report was presented to Shirlen.  A true and correct copy of the updated report is attached hereto as Exhibit 5.  This report reviewed the original design concepts and criteria, as well as additional concepts and criteria established by Hefter, Castro, and Johnson during the course of designing the various gripping structure designs.  Each of the various gripping structure designs, beginning with the Generation 1 design and ending with the Generation 6

12

design, was discussed with Shirlen. The focus of the meeting, however, was on the Generation 6 gripping structure considered by Hefter, Castro, and Johnson to be the preferred design.

31.     After conceiving and designing the gun carrier, Hefter, Castro, and Johnson disclosed their gun carrier design to Shirlen's patent attorney, Glenn Bellamy of the firm Wood, Herron & Evans, LLC of Cincinnati, Ohio. On June 5, 2020, Hefter emailed Mr. Bellamy the PowerPoint presentations dated April 24, 2020 and May 15, 2020. True and correct copies of these PowerPoint presentations are attached hereto as Exhibit 4 and Exhibit 5 respectively. Hefter disclosed to Mr. Bellamy Generations 1-6 of the gripping structure designs, as well as the clam shell gripping structure. In doing so, Hefter disclosed details of their structure, how they function and how they are incorporated into a hands-free gun carrier. Additionally, Hefter emailed Mr. Bellamy SolidWorks files of Generations 4 and 6 without the harness straps and buckles.

32.     During a follow up videoconference with Mr. Bellamy on June 15, 2020, the team at Incubate Products (Hefter, Castro and Johnson) explained the evolution of the various designs detailed in the PowerPoint presentations. Hefter described the design and engineering process that he and his colleagues employed in the course of designing the various gripping structures, as well as the overall gun carrier. On June 17, 2020, Hefter sent updated detailed drawings of the gun carrier design to Mr. Bellamy. These included Solidworks drawings showing Generations 4 and 6 of the gripping structure, the overall gun carrier assembly including drawings of the torso, buckles, straps, support plate, body harness, and how the gripping structures, support plate, and body harness are integrated into a unit.

13

33.     Additionally, on June 4, 2021, at the request of Mr. Bellamy, Johnson sent a series of emails including the full SolidWorks zip files for Generations 4, Clam Shell, and 6 for his draftsman. These files sent to Mr. Bellamy contained the same drawings that Mr. Bellamy incorporated into the provisional and non-provisional patent applications that led to the '304 patent.

34.     Shirlen filed a provisional patent application, No. 63/062,711, on August 7, 2020. A true and correct copy of that provisional application is attached hereto as Exhibit 6.   Shirlen's provisional patent application includes 23 drawings, all of which are copies of drawings provided to Mr. Bellamy by Hefter and Johnson.  Moreover, Shirlen's provisional patent application describes in detail the Generation 6 gripping structure, Generations 1-4 gripping structures, the clam shell gripping structure, body harness, and the support plate that is interposed between the body harness and the gripping structure, all of which were conceived and designed by Hefter, Castro, and Johnson.

35.     Shirlen named himself as the sole inventor of the gun carrier disclosed in the provisional patent application.  Along with the provisional patent application, Shirlen filed a Declaration declaring himself the sole inventor of the invention(s) claimed in the application. A true and correct copy of the Declaration is attached hereto as Exhibit 7. Furthermore, in the Declaration, Shirlen states that he is aware of his duty to disclose to the United States Patent and Trademark Office all information known to him to be material to patentability.  Shirlen failed to disclose to the United States Patent and Trademark Office that Hefter, Castro, and Johnson had conceived and designed all of the designs shown in the 29 drawings of the provisional patent application.

14

36.    Thereafter, Shirlen, on June 28, 2021, filed a non-provisional patent application based on the earlier filed provisional application. A true and correct copy of the non-provisional patent application is attached hereto as Exhibit 8.  The non-provisional patent application is identified by Application No. 17/359,777.  The non-provisional application included essentially the same 23 drawings of the provisional patent application.  Again, the non-provisional application included detailed descriptions, as well as claims, to the gun carrier and its components that were conceived and designed by Hefter, Castro, and Johnson.

37.    Along with the non-provisional application Shirlen again represented to the United States Patent and Trademark Office that he was the sole inventor of the claimed invention(s).  Accompanying the non-provisional application is a Declaration by Shirlen which declares that he is the sole inventor of the claimed invention(s), and that he is aware of his duty to disclose to the United States Patent and Trademark Office information known to him that is material to patentability. A true and correct copy of this additional Declaration is attached hereto as Exhibit 9.  Again, Shirlen fails to disclose to the United States Patent and Trademark Office the contributions to the claimed invention(s) made by Hefter, Castro, and Johnson.


B.    Hefter, Castro, and Johnson's contributions to the claimed invention(s) of the '304 patent

38.    Hefter, Castro, and Johnson jointly, and in some cases individually, conceived various elements and features of the claims of the '304 patent.  Claims 1 and 14 claim a gripping structure configured to releasably engage and support a long-gun in

15

a port arms position. Generations 1-4 and 6 gripping structures, as well as the clam shell gripping structure, are configured to releasably engage and support a long-gun, such as a shotgun, in a port arms position. Furthermore, these gripping structures include upper and lower spaced apart resiliently deflectable jaw members that define an opening facing forward relative to the user's chest. The upper jaw member includes an upper jaw portion and a downturned lip portion along a forward edge of the upper jaw portion. The lower jaw member of these gripping structures include a lower jaw portion and an upturned lip portion along a forward edge of the lower jaw portion. These gripping structures include a back. Back and jaw members are configured to resiliently receive a receiver of the long-gun with the long-gun in the port arms position. In this position, the back portion of the gripping structure engages the rear surface of the receiver, while the upper jaw portion engages the upper surface of the receiver and the lower jaw portion engages the lower surface of the receiver. The downturned lip portion of the upper jaw engages an upper forward surface of the receiver and the upturned lip portion of the lower jaw engages a lower forward surface of the receiver.

39.    Hefter, Castro, and Johnson jointly conceived:

a.    The support plate that is supported at a user's chest as described in claims 1 and 14.

b.    The jaw members being separate parts and adjustably spaced as described in claim 2.

c.    The feature that enables the resilient deflectability of at least one of the jaw members to be adjustable as described in claim 3.

16

d.     The gripping structure being made of resiliently flexible material as described in claims 4 and 5.

e.     At least one of the jaws includes a resilient hinge connection as described in claim 6.

f.     The gripping structure being selectively positionable on the support plate as described in claims 11 and 12.

40.    Hefter conceived:

a.     The releasable straps as described in claims 8 and 9.

b.     The support plate and the harness as described in claim 10.

c.     The L-shaped upper and lower jaw members where each of the jaw members includes a leg portion and a foot portion, and where the leg portions face one another and the foot portions overlap, forming the back portion of the gripping structure, as described in claim 13.

C.     Sherlin's unjust enrichment

41.    Incubate Products, through Hefter, Castro, and Johnson, provided product design services to Sherlin at his request.  These services produced the Hands-Free Long Gun Carrier shown and described in the '304 patent.

42.    Incubate Products expected to be compensated for those product design services.  The product design services  were not rendered gratuitously.

43.    Shirlen expressly dissolved the "existing arrangement" with Incubate on July 28, 2023, and Shirlen has not paid Incubate Products for the product design services rendered. A true and correct copy of Shirlen's communication is attached hereto as  Exhibit 10.

17

44.     Shirlen has benefited from the product design services rendered by Incubate Products.

45.     The product design services provided by Incubate Products has yielded a gun carrier design that the United States Patent and Trademark Office determined to be novel and non-obvious and hence patentable.  But for the product design services rendered by Incubate Products, there would be no '304 patent.

46,     As a result of the product design services provided by Incubate Products, Shirlen enjoys the benefit of being a co-inventor of the '304 patent and being a co-inventor of the '304 patent has value.

47.     In addition, Incubate Products delivered to Sherlin a production ready Hands-Free Long Gun Carrier design.

48.     Shirlen, as a co-inventor of the '304 patent, has the right to manufacture and sell the Hands-Free Long Gun Carrier design and has no obligation to share the profits or any proceeds with Incubate Products, Hefter, Castro, or Johnson, or account in any way to Incubate Products, Hefter, Castro, or Johnson.

49.     Shirlen, as a co-inventor of the '304 patent, can sell or transfer his rights in the '304 patent without sharing the proceeds of the sale with Incubate Products, Hefter, Castro, or Johnson.

50.     Shirlen can license the '304 patent without the consent of Incubate Products, Hefter, Castro, or Johnson.  By licensing the '304 patent, Shirlen can receive royalties and other income from one or more licensees with no obligation to share the royalties or income with Incubate Products, Hefter, Castro, or Johnson.

51.     Shirlen has been unjustly enriched.

## Count I

### (Correction of Inventorship of U.S. Patent No. 11,614,304)

52.     Incubate Products, Hefter, Castro, and Johnson repeat and reallege the allegations set forth in Paragraphs1 through 51 as if fully set forth herein.

53.     Hefter, Castro, and Johnson made significant contributions to the conception of the claimed invention(s) claimed in the '304 patent.

54.     Hefter, Castro, and Johnson are co-inventors of the invention(s) claimed in the '304 patent.

55.     Shirlen has refused to consent to correcting inventorship of the '304 patent.

56.     Pursuant to 35 U.S.C. § 256, Hefter, Castro, and Johnson seek a certificate of correction naming them as co-inventors of the '304 patent.

## Count II

### (Unjust Enrichment)

57.     Incubate Products, Hefter, Castro, and Johnson repeat and reallege the allegations set forth in Paragraphs 1 through 56 as if fully set forth herein.

58.     Incubate Products, Hefter, Castro, and Johnson have conferred the aforementioned benefits on Shirlen under circumstances which give rise to a legal or equitable obligation on the part of Shirlen to account for the benefits received.

59.     It was neither fair nor equitable for Defendant to accept and make use of Plaintiffs' services without compensating Plaintiffs.

19

60.     Hence, Incubate Products is entitled to recover from Shirlen damages or compensation based on the value of the product design services rendered to Shirlen by Incubate Products, or the value of Shirlen's interest in the '304 patent attributable to the designs of Hefter, Castro, and Johnson.

WHEREFORE, Incubate Products, Hefter, Castro, and Johnson respectfully pray the Court that:

1. The Court enter a judgment declaring that Hefter, Castro, and Johnson are co-inventors of the '304 patent;

2. The Court enter a judgment with an Order directed to the United States Patent and Trademark Office to correct inventorship of the '304 patent by adding Hefter, Castro, and Johnson as joint inventors;

3. The Court enter a judgment declaring that this is an exceptional case under 35 U.S.C. § 285 and award Incubate Products, Hefter, Castro, and Johnson their reasonable attorney fees and costs;

4. Plaintiffs have and recover as damages the value of the product design services rendered to Shirlen by Incubate, or the value of Shirlen's interest in the '304 patent attributable to the designs of Hefter, Castro, and Johnson;

5. The costs of this action be taxed against Defendant; and

6. That Plaintiffs have such other and further relief that this Court deems just and proper.

Respectfully submitted this the 15th day of December 2023.

COATS + BENNETT, PLLC


By: /s/ Larry L. Coats
    Larry L. Coats
N.C. State Bar No. 5547
    Gavin B. Parsons
N.C. State Bar No. 28013
Attorneys for Plaintiffs
INCUBATE PRODUCTS, LLC,
Robert Hefter, Salvadore Castro, and
Kevin Johnson

1400 Crescent Green, Suite 300
Cary, North Carolina  27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
lcoats@coatsandbennett.com
gparsons@coatsandbennett.com